IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Temmessia Thurmond, ) | |
| ) | Civil Action No. 6:12-2758-TMC-KFM |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| Drive Automotive Industries of America, ) Inc. *doing business as* Magna Drive ) Automotive, ) | |
| ) | |
| Defendant/Third-Party Plaintiff ) | |
| ) | |
| vs. ) | |
| ) | |
| Employ Bridge of Dallas, Inc *doing business as* Resource MFG, and Staffing Solutions Southeast, Inc, *doing business as* Resource MFG, ) ) ) ) | |
| ) | |
| Third Party Defendants. ) ) | |

This matter is before the court on the third party defendants' motion to dismiss the third party complaint (doc. 32). In her complaint, the plaintiff alleges claims for sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Civil Rule 73.02(B)(2)(g) DSC, all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Temmessia Thurmond filed a complaint against Drive Automotive Industries, Inc. ("Drive") in the Court of Common Pleas, County of Greenville, South Carolina, on August 21, 2012. Drive removed the case to this court on September 24, 2012. The complaint asserts that the plaintiff suffered sexual harassment and retaliation

while she was employed with Drive (doc. 1-1, comp. ¶¶ 1, 13, 17). The plaintiff's complaint against Drive asserts two counts under Title VII. Count I asserts a claim against Drive for hostile work environment, alleging that Drive "intentionally discriminated against Plaintiff on the basis of her sex" (*id.* ¶ 12), and "created, tolerated, and condoned conduct that was severe or pervasive towards Plaintiff on account of her sex" (*id.* ¶ 13). In Count II, the plaintiff asserts that Drive "retaliated against Plaintiff in response to her participating in proceedings under Title VII as well as under the Defendant's own internal process" (*id.* ¶ 17). The plaintiff filed an EEOC charge of discrimination against Drive and claims that she ultimately resigned her employment due to the abusive work environment she suffered (*id.* ¶¶ 7, 15). The plaintiff alleges that Drive has a contractual relationship with EmployBridge of Dallas, Inc. ("EmployBridge") and Staffing Solutions Southeast, Inc. ("Staffing Solutions") d/b/a Resource MFG "as to Plaintiff's employment with [Drive]" and that they acted as Drive's agents "with respect to the handling of complaints of employees" (*id.* ¶ 2). The plaintiff further alleges that she complained about harassment through EmployBridge and Staffing Solutions (*id.* ¶ 5).

Drive filed a third party complaint against EmployBridge and Staffing Solutions (collectively "Resource" or "the third party defendants") on January 17, 2013. Resource operates a staffing agency that placed certain employees with Drive to provide services in support of Drive's manufacturing business (doc. 22, 3rd party comp. ¶ 4). The plaintiff was assigned by Staffing Solutions to provide services at Drive (*id.* ¶ 9).

In the third party complaint, Drive contends that it operated with Resource pursuant to an Agreement and a Purchase Order (*id.* ¶ 5). The Agreement states in pertinent part:

> Resource . . . acknowledges that it is the employer of the Temporary Workers. . . . As the employer of the Temporary

2

> Workers, Resource . . . shall be responsible for all duties relating to hiring, discipline, reassignment and termination. Resource . . . shall indemnify and save Drive . . . harmless from any costs, demands, complaints or liability whatsoever arising . . . with respect to any claim by a Temporary Worker against Drive . . . for termination pay, notice of termination, severance pay, vacation pay, or employment related benefits claims of any kind, where the Temporary Worker claims to have been an employee of Drive . . . .

(Doc. 22-1, 3rd party comp., ex. A ¶ 12).

The Agreement further states:

> Resource . . . guarantees and warrants that its employment of Temporary Workers shall be in strict compliance with all applicable federal, state, provincial and local laws. For Temporary Workers assigned to Drive . . . this shall include without limitation: . . . the Civil Rights Act . . . as well as any other applicable or equivalent state, federal or local laws, regulating employment . . . wrongful discharge or workplace discrimination or retaliation. Resource . . . agrees to indemnify and save Drive . . . harmless from any action, claim, costs, complaint, demand, expenses, fines, losses, regulatory proceedings, or liability whatsoever arising (the "Claims") with respect to any failure on the part of Resource . . . to comply with such legal requirements.

(*Id.* ¶ 13(a)). The Agreement goes on to provide:

> In the performance of this Agreement, Drive . . . agrees to comply with all applicable federal, state, provincial and local laws . . . which prohibit discrimination and/or harassment in the workplace, and will indemnify and save Resource . . . harmless with respect to any Claims which are shown to result solely and directly from Drive's . . . material breach of such laws.

3

(*Id*. ¶ 13(c)).

The Purchase Order, through the Terms and Conditions incorporated therein, states that Resource agrees to indemnify Drive for any "acts, omissions or negligence of [Resource] . . . in connection with [Resource's] performance of its obligations under" the Purchase Order (doc. 22-3, 3rd party comp., Ex. C ¶ 14(c)).  The Terms and Conditions further state that Resource agrees to comply with all federal laws and agrees to indemnify Drive for any claims "arising from or as a result of [Resource's] failure to comply" with all laws (*id*. ¶ 21).

Drive asserts two theories for its claims against Resource in the third party complaint: contribution and indemnity.  In Count I, Drive asserts that Resource is "obligated to reimburse and is liable to Drive for all or any liability . . . assessed [against Drive] by way of contribution" (doc. 22, 3rd party comp. ¶ 15).  In Count II, Drive asserts that pursuant to the "indemnity provisions in the Agreement and Purchase Order Terms and Conditions, Resource is liable to Drive for all costs of defense, including attorneys' fees and damages incurred by Drive in connection with the present lawsuit, and for all alleged damages by Plaintiff, including wages, attorneys' fees, and costs" (*id.* ¶ 19).  Drive alleges in the third party complaint that the plaintiff's complaint "is premised upon alleged sexual misconduct by another Temporary Worker of Resource placed at Drive (*id.* ¶ 11).  Drive further alleges that Resource at all times remained the sole and exclusive employer of the Temporary Workers it placed with Drive, and Resource made all personnel decisions with respect to the plaintiff, including the decision to terminate her employment (*id.* ¶¶ 4, 12).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal if the opposing party fails to state a claim for which relief can be granted.  Federal Rule of Civil Procedure 8(a) sets forth a liberal pleading standard, which requires only a " 'short and

4

plain statement of the claim showing the pleader is entitled to relief,' in order to 'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "To survive a Rule 12(b)(6) motion to dismiss, the facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.' " *Robinson v. American Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, 569). When determining a motion to dismiss pursuant to Rule 12(b)(6), the court must take all well-pled material allegations of the complaint as admitted and view them in the light most favorable to the non-moving party. *De Sole v. U.S.*, 947 F.2d 1169, 1171 (4th Cir. 1991) (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)).

***Contribution***

Resource argues in the instant motion that Drive's contribution claim should be dismissed because there is no express or implied right to contribution under Title VII and there is no common law right to contribution in a Title VII action. In *Northwest Airlines, Inc. v. Transport Workers Union of America, AFL-CIO*, 451 U.S. 77 (1981), the United States Supreme Court held that there is no express or implied right of contribution under Title VII. *Id*. at 91-94. The Court also held that there can be no federal common law right to contribution regarding Title VII violations, as the remedies set forth by Congress in Title VII are the exclusive remedies available under the statute, and federal courts are without authority to craft additional, supplemental remedies - even if the third party might bear partial responsibility for the statutory violations. *Id*. at 95-99.

Drive argues in response that it "is not asserting a claim for contribution based upon any implied rights – Drive . . . is asserting a claim for contribution based in express contract" (doc. 34, Drive resp. at p. 6). However, "[t]he doctrine of contribution does not rest upon contract but upon general principles of equity and natural justice; and the right arises

when one has been compelled to pay more than his share of a common obligation which several persons are bound to discharge." *American Emp. Ins. Cov. v. Maryland Cas. Co.*, 218 F.2d 335, 338 (4th Cir. 1954). Drive offers no authority to the contrary (*see* doc. 34, Drive resp.). Furthermore, Drive's third party complaint does not allege the existence of a contractual contribution term (*see* doc. 22, 3rd party comp. ¶¶ 14-15). In its argument in opposition to the motion to dismiss, Drive cites provisions in the Agreement and Purchase Order "containing warranties, guarantees, and indemnification provisions, in favor of both Drive . . . and Resource" (doc. 34, Drive resp. at p. 6) (emphasis omitted), but fails to cite to any provision regarding contribution. As argued by Resource, this is for good reason, as the Agreement and Purchase Order reference indemnification several times, as set forth above, but do not contain any reference to contribution (*see generally* docs. 22-1, 22-3).

Drive argues that "the other cases cited by Resource in support of dismissal of the contribution claim are similarly based upon any implied rights under federal statutory or common law and do not involve a contractual provision for contribution" (doc. 34, Drive resp. at p. 7). As the Agreement and Purchase Order at issue here also "do not involve a contractual provision for contribution," the cases cited by Resource are perfectly applicable. In a Title VII case also involving an employer's attempt to assert a third party complaint against its staffing company, the court held that the third party claim for contribution failed as a matter of law. *EEOC v. Blockbuster Inc.*, No. RWT 07cv2612, 2010 WL 290952, at *2 (D. Md. Jan. 14, 2010). Like Drive, the third party plaintiff in *Blockbuster* sought to assert a claim for contribution in a Title VII case based on indemnity language in the underlying contract. The court recognized that "indemnification and contribution are not the same. Indemnification shifts the entire loss from one wrongdoer to another while contribution distributes losses among wrongdoers by requiring each to pay his proportionate share. " *Id.* The court found that the staffing services agreement "contains provisions for indemnification, not contribution." *Id*. at *2. Thus, the court "refuse[d] to read any right to

contribution under this section or any other section of the Services Agreement" and found that the "claim for contribution is without merit because the Services Agreement contemplates indemnification only . . . ."  *Id*. at *2, 4.

As there is no express or implied right to contribution under Title VII and no common law right to contribution in a Title VII action, and as the contract between Drive and Resource contemplates indemnification only, Resource's motion to dismiss Count I of the third party complaint should be granted.

*Indemnification*

Resource next argues that Drive's claim for contractual indemnification is preempted by Title VII and federal public policy, noting that the Fourth Circuit "has repeatedly rejected attempts by parties to invoke state law to seek indemnity for violations of comprehensive federal remedial statutes that do not expressly provide a right to indemnification, holding that such state law actions are preempted" (doc. 32-1, Resource m. to dismiss at pp. 7-8) (citing *Lyle v. Food Lion, Inc.*, 954 F.2d 984, 987 (4th Cir. 1992) (holding employer's state law claims for indemnity for Fair Labor Standards Act violations were preempted); *Baker, Watts & Co. v. Miles & Stockbridge*, 876 F.2d 1101, 1108 (4th Cir. 1989) (holding state law action for indemnification for violations of federal securities laws were preempted); *Equal Rights Center v. Archstone Smith Trust*, 603 F. Supp.2d 814, 824-25 (D. Md. 2009) (holding that state law crossclaims seeking indemnity based on contracts containing express indemnity provisions were barred by the Fair Housing Act and the Americans with Disabilities Act)).

Drive argues in response that it is not trying "to shift the entire liability for its 'wrongdoing' to another party," and thus the cases cited by Resource are inapposite (doc. 34, Drive resp. at p. 9).  However, as stated by the district court in *Archstone Smith Trust* when presented with the same argument, "that is exactly what indemnity means." 603

F.Supp.2d at 825.[1] Instead, Drive contends that since the plaintiff has alleged wrongdoing on the part of both Drive and Resource and is attempting to hold Drive solely responsible for Resource's alleged wrongdoing through agency, the claim for indemnification is appropriate as the public policy concerns present in the cases cited by Resource are not present here (*id.* at pp. 10-11).  Nonetheless, as argued by Resource, the third party complaint seeks to shift Drive's entire liability to Resource.  For instance, the third party complaint alleges, "Resource is liable to Drive for all costs of defense, including attorneys' fees and damages incurred by Drive in connection with the present lawsuit, and for all alleged damages by Plaintiff, including wages, attorneys' fees, and costs" (doc. 22, 3rd party comp.. ¶ 19).  The third party complaint further states, "Drive demands judgment against Resource for all costs of defense . . . incurred by Drive in connection with the present lawsuit, and for all alleged damages by Plaintiff . . . .") (*id.* at p. 4).

In *EEOC v. Blockbuster*, discussed above with regard to the contribution claim, the EEOC brought suit against an employer alleging unlawful employment practices in violation of Title VII. 2010 WL 290952, at *1.  Like Drive, the employer/defendant (Blockbuster) filed a third party complaint against its staffing company, which had provided temporary workers. Blockbuster claimed that its contract with the staffing company included an indemnity clause, and thus it asserted a third party claim for contractual indemnity against the staffing company. *Id*. at *1-2.  Just like Drive, Blockbuster claimed that "if it is found to be liable in whole or in part to the Plaintiff EEOC, then pursuant to the contractual relationship . . . , [the staffing company] is liable for indemnification to Blockbuster for any liability on its part to the EEOC." *Id*. at *1.  The court granted the staffing company's motion for judgment on the pleadings on the indemnification claim because the contractual

---

[1] "Indemnification, of course, involves shifting the entire loss from one wrongdoer to another; contribution requires each wrongdoer to pay his proportionate-or pro rata-share of the adverse judgment." *Baker, Watts & Co.*, 876 F.2d at 1103.

indemnity provision was void as against public policy and preempted by Title VII. *Id*. at *2. Blockbuster filed a motion for reconsideration, arguing, like Drive in this case, that it sought indemnification "for the subcontractor's misconduct, as opposed to any alleged misconduct of Blockbuster." *Id*.

The court noted that the plaintiff "brought this action against Blockbuster only" and did not sue the staffing company. The court reasoned that "[i]f Blockbuster is held liable, it can only be because Blockbuster subjected the Charging Parties to, or permitted the Charging Parties to be subjected to, unwelcome and offensive harassment and retaliation. Because Blockbuster can be held liable only for its own violations of Title VII, . . . contribution is inapplicable and Blockbuster cannot seek to distribute its losses." *Id*. at *3. Acknowledging that the "issue of whether Title VII bars a party's contractual claim for indemnification is a question of first impression in the Fourth Circuit," the court found as follows:

> In light of these decisions disfavoring indemnification claims for violations of the federal Securities Act of 1933, the FHA, and the ADA, the Court concludes that Blockbuster's claims for indemnification for violations of Title VII are similarly barred. The Supreme Court has held that "[t]he language of Title VII makes plain the purpose of Congress to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The primary goal of Title VII to eradicate discriminatory conduct would be thwarted if Blockbuster were permitted to contract around its obligations and shift its entire responsibility for complying with Title VII. *Cf. Archstone*, 603 F.Supp.2d at 825. Blockbuster therefore cannot seek contractual indemnification from [the staffing company] or any other entity.

9

2010 WL 290952, at *4. The *Blockbuster* case is directly on point, and the undersigned finds the court's reasoning persuasive. Based upon the foregoing, Count II of the third party complaint should be dismissed as it is preempted by Title VII.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the third party defendants' motion to dismiss (doc. 32) should be granted.

IT IS SO RECOMMENDED.


June 25, 2013                                    s/ Kevin F. McDonald
Greenville, South Carolina              United States Magistrate Judge